JOANNA CRANE, surviving executrix of Stephen Crane, v. PRUDDEN ALLING.

An administrator *de bonis non,* is within the equity of the statute to prevent the abatement of suits, *Rev. Laws,* 163, and the suit will be continued in his name.

This was an application for leave to suggest on the record, the death of the plaintiff, and that the action be continued at the suit of David S. Crane, administrator *de bonis non, cum testamento annexo,* of Stephen Crane, deceased.

*Gifford* and *Frelinghuysen,* in support of the motion.

*Vanarsdale* and *Williamson,* contra.

The opinion of the court was delivered by

HORNBLOWER, C. J.   This application must be considered as founded upon the equity of the statute, to prevent the abatement of suits. *Rev. Laws,* 163. It is clearly not within the letter of the law. By the third section it is enacted in general terms, that the death of the plaintiff or defendant, after issue joined, shall not abate the action, if it might have been originally prosecuted or maintained, by or against the executors or administrators of such plaintiff or defendant; it then proceeds in the following words: "but the death of such plaintiff or defendant, being suggested upon the record and the names of the executors or administrators *of such deceased* plaintiff or defendant being entered upon the record, the "action shall proceed, &c." By the terms of the act, therefore, no one but an executor or administrator of the deceased plaintiff can be admitted; whereas the applicant is not her representative, but the representative of the original testator. Nor is an administrator *de bonis non* embraced in the language of the last two clauses of the third section, as was supposed by the plaintiff's counsel. The meaning of those clauses, is not very obvious. The section would have been complete without them; at least so far as was necessary to establish the principle that a suit should not abate by the death of a party after issue joined, if the cause of action survived to or against the executor or administrator of the deceased party. But I am inclined to think they were added, to carry out and extend the rule indefinitely, so as to prevent an abatement of the suit, in the event of the subsequent death of an executor or adminstrator who had been

Crane *v.* Alling.

made a party in the place of their testator or intestate. To illustrate my meaning : suppose Stephen Crane, the obligee, had commenced this action, then on his death, after issue joined, the suit might have been continued *by force* of the general provision in that section, in the name of Joanna Crane, his executrix ; and if she had died leaving an executor ; then, by virtue of the latter clauses of the section, the suit might have been again continued in the name of her executor.

But though this case does not fall within the words, I cannot divest myself of the conviction, that it is so plainly within the reason, the spirit, and the equity of the statute, that we may safely, and indeed, that we· are bound judicially to apply the remedy. This branch of our statute is an improvement upon, and extention of the remedial principles adopted by the 17 *Car.* 2, *c.* 8 ; and the 8 & 9 *W.* 3, *c.* 2, s. 6 & 7. The former saved the action, in the event of the death of a party, after verdict : the latter carried the remedy still farther, and saved the action after interlocutory judgment. *Gould's Plead.* 267, *sec.* 95. Our statute goes back one step farther, and prevents an abatement by death, in every case after issue joined. These are remedial statutes, and should be favorably construed. 2 *Saund.* 72, *m. in note ;* 1 *Salk.* 8, *Jacobs* v. *Miniconi,* 7 *T. R.* 31 ; *Hunt* v. *Whitney,* 4 *Mass. Rep.* 620. The objection urged by the defendant's counsel, to this application, is, that there is no *privity* between the administrator *de bonis non,* of Stephen Crane, and Joanna Crane, his executrix. But the language of this objection is borrowed from the terms used in the books, when discussing the question, who may sue out a writ of error, or a scire facias upon a record, and in my opinion, is not applicable to the case under consideration.

At the common law, executors of executors, did not represent the first testator ; at least, they could not sue or be sued as such, until the statute of 25 *Edw.* III. 1 *Went. off. Exrs.* 257, *& seq. ;* 1 *Shep. Touchst.* 464 ; 1 *Wms. Exrs.* 133, *part* I, *Book* III, *c.* 4 ; 2 *Bl. Com.* 506 ; *N. J. Rev. Laws,* 174, *sec.* 4. Hence it follows, that the right of the executor of a deceased executor, to represent the first testator, is not derived from, nor is it founded on, any notion of *privity* between him and his im-

mediate testator. If it had been, then the right would have existed at the common law.

Again, if it depended upon the question of *privity* between the applicant and the deceased party on the record, then in this case, the *administrator* of Joanna Crane, would be entitled to continue this action : for, there is no want of *privity* between *him* and *her*. He is her immediate and lawful representative ; as much so as her executor would be. Yet it is not pretended, that her administrator can continue this suit. It is true, an administrator derives his appointment and authority from the ordinary, and not from the intestate. But it will not do on that account, to deny any *privity* between the administrator and his intestate; for then, if *privity* is the criterion, the administrator could not continue a suit commenced by his immediate intestate in his own right, and for a cause of action which the administrator might have originally prosecuted and maintained. All this shows, that the right is a statute right, and not founded on any common law notion of *privity* of interest or title. But why, since the right of an executor or administrator to continue a suit commenced by the testator or intestate, is derived from the statute, may not the administrator of Joanna Crane, be permitted to do so, as well as her executor ? The answer is obvious; not for want of privity, nor because her administrator is not her personal representative, as well as her executor ; but because her *executor*, and not her administrator, by operation of law, would be the personal representative of Stephen Crane, her testator. The reason assigned in the books, why the executor of an executor, but not the administrator of an executor, or the executor or administrator of an administrator, may sue out a scire facias, is, because the latter do not represent the first testator: or, in other words, because they are not subject to the payment of the debts of the first testator. *Brudnel's case,* 5 *Co.* 9 *b.* ; 2 *Archb. Pr.* 80. If Joanna Crane had died before commencing this suit, her executor, if she had made one, might have brought the action ; but he must have done so, as the legal representative of the obligee ; not simply as her executor. He must have shown on the record, his title to the bond, by stating that he was executor of Joanna Crane, who was executrix of the obligee. The money when

recovered, would not have been commingled with, or have constituted any part of the assets of Joanna Crane's estate; nor could he be called on to account for them by her legatees or next of kin. They would have been assets of the estate of Stephen Crane. Why then, when the administrator *de bonis non*, to whom the money now belongs, as the legal representative of the obligee, asks leave to continue this suit, should be rejected, and driven to commence a new action, while if another representative, made so only by an arbitrary rule of law, an executor of an executor, should make the same request, it would be granted? Why yield to the influence of names and forms, when the whole scope and spirit of legislation upon the subject, shows a clear intention, that suits shall not abate by the death of a party after issue joined, if the cause of action survive? Will not such an adherence to the mere forms of speech, justly expose us to the censure conveyed in the maxim " *qui hæret in litera hæret in cortice ?* " It is the glory of the law of England, which in this particular, is our law, that it respects the effect and substance of the matter, and not every nicety of form and circumstance.    *Co. Litt.* 283, *b.*

The cases that were cited to show that there must be *privity* between the parties, are inapplicable.    The case of *Grout* v. *Chamberlin*, 4 *Mass. Rep.* 611, was a case in error.    The executor had recovered a judgment and died.    The judgment was erroneously entered to the prejudice of the testator's estate, and the administrator *de bonis non*, &c. brought error to reverse it. The whole point decided in that case was, that the administrator *de bonis non*, could not maintain error : that if the judgment had been satisfied, the debt was administered ; and if it had not been satisfied, it was a nullity ; because the 17 *Car.* 2, authorising an administrator *de bonis non*, to execute a judgment recovered by a former executor or administrator, had not been enacted in that state.    The administrator *de bonis non*, was therefore at liberty to bring a suit *de novo*, and could not be prejudiced by the former judgment.    The subsequent decision between the same parties reported in 4 *Mass.* 613, is but a confirmation of the doctrine laid down in the former case.

The case cited from 8 *Mass.* 521, shows only that an action against the assignee of a bankrupt, does not survive against his

Crane *v.* Alling.

representatives. The cases of *Yates* v. *Gough, Yelverton Rep.* 33, was in the first of James I.; and of course long before the 17 *Car.* 2. The administrator *de bonis non*, brought a scire facias to have execution of a judgment recovered by a previous administrator who had died intestate. It was held not to lie; the court say, "one administrator is not *privy* to the other; and this scire facias, being grounded upon *a record*, he who will have *an action upon the record*, ought to make himself privy to him who was before the party to the record." At the common law, the only remedy in case the plaintiff died after judgment and before execution, was by action of debt on the judgment by the executor or administrator of the deceased plaintiff. But the *statute of Westm.* (13 *Edw.* 1) *c.* 45, gave a scire facias in such cases, to the executor or administrator in personal actions. 2 *Saund.* 6 *n.* 1. Under that statute, it was held that a scire facias might issue by or against an executor of an executor, but not by or against the administrator of an executor, or the executor or administrator of an administrator, because they did not represent the first testator. 2 *Arch Pr.* 80. Accordingly in *Brudnel's case,* 5 *Co.* 9, it is ruled, that none shall have execution of a judgment recovered by an executor or administrator, but he who shall be subject to the payment of the debts. Hence it followed, that in case of the death of the executor intestate, or of the administrator of one who had died intestate after judgment, it became necessary for some person to take out administration *de bonis non*, and to commence a new suit. *Turner* v. *Davies,* 2 *Saund.* 149. To remedy this inconvenience, the 17 *Car.* 2, *c.* 8, *s.* 2,) of which our statute *Rev. Laws,* 175, *sec.* 5, is a copy,) was passed, giving a scire facias and execution to an administrator *de bonis non.* But as has been already remarked, that statute had not been passed when the case of *Yates* v. *Gough, Yelv.* 33, was decided; and therefore the only question in that case was, whether at the common law, there was any privity between the plaintiff in scire facias, and the deceased plaintiff on the record. *Barnehurst* v. *Yelverton,* in *Yelv.* 83, is to the same effect. The case of *Tingrey* v. *Brown,* 1 *Bos. & Pul.* 310, was an attempt by an administratrix of an executor, to recover money due to him as executor; in other words, to recover assets belonging to her intestate's testator. The court

very properly said, she should have taken out administration *de bonis non*, &c.

It is unnecessary to pursue the cases any farther. The question here is not who may upon common law principles, maintain an action upon a record, or have a writ of error to reverse a judgment; but whether an administrator *de bon non*, is not within the purview and equity of the statute to prevent the abatement of suits.

It would be almost endless, to cite the instances in which the remedy has been extended to cases not within the letter, but within the equity of a statute. A tenant by the curtesy, is held to be within the equity of the *Stat. of* 32, *H.* 8, *c.* 2. For, though he is neither a tenant in common, or a joint tenant, he is, as the books express it, "in the same mischief." *Co. Litt.* 175, *b. lib.* 3, *Ch.* 1. *sec.* 264.

By 21 *H.* 8, it was enacted, that if lands are directed to be sold by executors, and if some refused, yet the residue may sell. And Littleton says, " albeit the letter of the law extendeth only where executors have a *power* to sell, yet being *a beneficial law*, it is by construction, extended where lands are *devised* to executors to be sold." *Co. Litt.* 113, *a Lib.* 2 *Cap.* 10, *s.* 169.

So the remedy given by the 9 *Edw.* 3 *cap.* 3, against executors. *Rev. Laws*, 175, *sec.* 6, has always been extended by an equitable construction, to administrators; because they are within the equity of the statute. 6 *Bac. abr. Gwil. Ed. tit. statutes*, p. 387, as quoted in *Eyston* v. *Studd*, 2 *Plow.* 467, says, " *so where the words of a statute enact one thing, they enact all other things which are in the like degree.*" In the case of *Eyston* v. *Studd*, just cited, the matter was expressly within the letter of 21 *H.* 7, yet not being within the intent and purview of the statute, it was held not to be within the meaning of it. And *Plowden*, after reporting the case says, in *page* 465, "*From this judgment and the cause of it, the reader may observe*, that it is not *the words of the law, but the* internal sense of it, *that makes the law, and one law, (like all others,) consists of two parts, viz. of body and soul ; the letter of the law is the body of the law, and the sense and reason of the law, is the soul of the law, quia ratio legis est anima legis.*"

It must, I think, be admitted, that the equity of the statute in

Crane *v.* Alling.

either of the cases I have cited, was not stronger or more manifest, than it is in the one under consideration. There is just as much reason why an administrator *de bonis non*, should be permitted to continue a suit, as that an executor of an executor, should be permitted to do so. They stand in precisely the same relation to the estate of the first testator, and the mischief and inconvenience of an abatement, is as great in the one case as in the other. What was the object and design of legislation on this subject? Surely it was not primarily and chiefly, to determine who might continue the suit: that was only an incidental matter: the *great object* of the legislature was to prevent the unnecessary abatement of suits, where the right of action survived. This is the *soul* of the statute. It enacts, that suits which would survive to personal representatives, shall not abate by the death of a party after issue joined. So far, it introduces and establishes a new and salutary principle: the rest of the section is directory. It merely prescribes how, and by whom, the suit shall be continued of record. If in giving these directions, the legislature have omitted to direct what shall be done in case an executor shall bring an action which would survive to his executor, and then die, shall we suffer the law to fail in its beneficial intention: or shall we carry it into effect, by permitting the administrator *de bonis non*, to continue the action? In view of the whole case, and upon the rules of construction, to be found in case of *Eyston* v. *Studd*, 2 *Plowd*, 465, and *seq.;* in 1 *Kent's Com.* 431, and *seq.*; and in other books, I am of opinion, that the administrator *de bonis non*, is within the equity of the statute, and that the suit ought to be continued in his name.

FORD, J. concurred.

RYERSON, J. concurred.

Rule granted.

CITED in *Dickerson* v. *Stow*, 4 *Zab.* 552 ; *Hogart* v. *Wallace*, 4 *Dutch.* 526.